UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WORKLIS LUNA APONTE,

                               Petitioner,        No. 10-CV-6024 CJS

   -vs-

                                          DECISION AND ORDER

ERIC HOLDER, JR., United States
Attorney General, et al.,

                               Respondents.

_____


APPEARANCES

For Petitioner:                   Worklis Luna-Aponte, *pro se*
                                     A44-133-120
                                     Buffalo Federal Detention Center
                                     4250 Federal Drive
                                     Batavia, New York 14020

                                     *Amici Curiae*
                                     Judy Rabinovitz, Esq.
                                     Tanaz Moghadam, Esq.
                                     American Civil Liberties Union Foundation
                                     Immigrants' Rights Project
                                     125 Broad Street, 18th Floor
                                     New York, New York 10004

                                     Arthur Eisenberg, Esq.
                                     New York Civil Liberties Union
                                     125 Broad Street, 19th Floor
                                     New York, New York 10004

For Respondents:               Gail Y. Mitchell, Esq.
                                     Assistant United States Attorney
                                     138 Delaware Avenue
                                     Buffalo, New York 14202

INTRODUCTION

Petitioner Worlklis Luna Aponte ("Petitioner") is a native and citizen of the Dominican Republic, who has been administratively ordered to be removed from this country because of his criminal activity. Petitioner is seeking judicial review of his removal order by the United States Circuit Court of Appeals for the Second Circuit. In the meantime, Petitioner, whose deportation has been effectively stayed pursuant to an agreement between the Attorney General and the Second Circuit Court of Appeals, has remained in civil detention for approximately 39 months, without a bond hearing. Pursuant to 28 U.S.C. § 2241, Petitioner contends that such detention violates his rights under the Immigration and Naturalization Act ("INA") and the Due Process Clause of the Fifth Amendment to the United States Constitution. For the reasons that follow, the petition is denied.

BACKGROUND

In or about 1993, Petitioner entered the United States as a lawful permanent resident alien. On September 20, 2006, Petitioner was convicted, in New York State Supreme Court, Kings County, of Criminal Possession of a Controlled Substance in the Fifth Degree, a class D felony, in violation of Penal Law § 220.31, and sentenced to eighteen months in state prison.

On November 21, 2006, the U.S. Department of Homeland Security ("DHS") charged Petitioner with being subject to removal from the United States as an alien convicted of a controlled substance offense, pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), and as an alien convicted of a drug trafficking crime, pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). While this removal proceeding was

2

pending, Petitioner filed an application in New York State Supreme Court, New York County, to have his conviction under Penal Law § 220.31 set aside, on the grounds that his attorney failed to provide him effective assistance, by failing to explain to him that his guilty plea could result in deportation. Petition at p. 4.[1] Petitioner requested that his removal proceedings be stayed pending the outcome of that application. However, on May 3, 2007, an Immigration Judge ("IJ") ordered that Petitioner be removed from the U.S. on both of the grounds charged. On May 13, 2007, Petitioner was released from the custody of the New York State Department of Correctional Services ("DOCS"), and taken into custody by the DHS. Petitioner appealed the IJ's order, on the grounds that the IJ should have stayed the removal proceeding, pending the outcome of his application to have his conviction vacated. However, on July 20, 2007, the Board of Immigration Appeals ("BIA") dismissed the appeal.

On September 5, 2007, Petitioner filed an untimely appeal with the United States Circuit Court of Appeals for the Second Circuit. (Case No. 07-3796-ag). Although Petitioner does not indicate the basis for the appeal, it appears that he is again claiming that the IJ should have stayed his removal proceedings pending the outcome of his application to vacate his conviction in New York State Supreme Court. Petition at p. 6; BIA Appeal. Petitioner also filed a motion for a stay of removal, which the Second Circuit has never granted or denied. Petitioner's deportation, though, has been effectively stayed nonetheless, pursuant to a standing agreement ("the forbearance policy") between the United States Attorney General and the Second Circuit. See, Affidavit of Donald J.

---

[1] The record contains no further information concerning this three-year-old application, and it therefore appears that the application was denied.

Vaccaro, Jr. at ¶ 17 ("Luna-Aponte's case is subject to an agreement between DHS and [the Second Circuit] which provides that DHS will not remove any alien who has requested a stay of removal with a petition for review of an immigration order of removal, unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied.").

Respondent filed a motion with the Second Circuit, to deny the appeal as untimely, and to deny the motion for a stay. The Second Circuit directed the parties to brief the threshold jurisdictional issue of whether dismissal of the petition would violate the Suspension Clause of the United States Constitution. In that regard, the Second Circuit consolidated Petitioner's case with several other cases raising the same issue, and appointed counsel to represent Petitioner. The briefing schedule was extended several times, and the Circuit Court has not yet issued a decision.

In the meantime, since May 13, 2007, Petitioner has been detained at the Buffalo Federal Detention Facility. During that period, DHS has taken steps to obtain the necessary travel documents to return Petitioner to the Dominican Republic. In that regard, DHS maintains that there is nothing to prevent Petitioner from being deported at this time, except for the aforementioned forbearance policy. DHS further states that there will be no obstacle to returning Petitioner to the Dominican Republic if the Order of Removal is affirmed, since "DHS regularly removes aliens to the Dominican Republic." Vaccaro Aff. ¶ 18.

Additionally, DHS has conducted periodic reviews of Petitioner's custody status. Specifically, DHS conducted such reviews in October 2007, October 2008, and October

2009.[2]  The reviews consisted of an examination of Petitioner's file by a DHS employee. Following each such review, DHS notified Petitioner that it would continue his detention, since, if he was released, he would pose a threat to the community and would also pose a risk of flight.  With respect to this, DHS stated that Petitioner had two criminal convictions, one in 2006, for Criminal Sale of a Controlled Substance in the Fifth Degree, and one in 2001, for Robbery in the Third Degree.[3]  As to the robbery conviction, DHS stated that Petitioner was originally sentenced to probation, but violated probation, and was re-sentenced to six months' incarceration.  DHS further stated:

> The nature of your crimes demonstrates a pattern of disregard for the laws of the United States.  You have also shown an inability to conform to the rules of society, exemplified by your violation of the conditions of your probation, making you a flight risk.  In addition, your promotion of illegal drugs on the streets in the community poses a significant threat to community members and their children.

Petitioner maintains that the custody reviews in 2008 and 2009 did not provide him with appropriate procedural safeguards as required by 8 C.F.R. § 241.4.  For example, Petitioner contends that he was denied the opportunity to present his case in 2009, since he was given notice of the custody review the same day that it occurred.  Petitioner also

---

[2]As discussed further below, DHS conducted such reviews because it maintains that Petitioner's situation is governed by INA § 241, and specifically, by 8 U.S.C. § 1231(a)(6), which grants DHS discretion to release criminal aliens under certain circumstances.  However, since Petitioner was, and is, actually being detained pursuant to INA § 236(c), which provides for mandatory detention of criminal aliens, he was not eligible for release.

[3]Prior to such custody reviews, in his BIA appeal, Petitioner represented that his conviction for Criminal Sale of Controlled Substance in the Fifth Degree was his "first and only conviction." BIA Appeal at p. 1.  However, in this action, Petitioner does not dispute that he was also previously convicted of robbery, or that he violated his probation.  Instead, *Amici Curiae* refer to the earlier conviction, but dismiss it as "one from nearly a decade ago for which he received a noncustodial setence." Amici Brief at 12.  Amici do not address DHS's contention that Petitioner violated his probation, except to say that such violation does not necessarily "reflect[ ] on Mr. Luna-Aponte's *current* risk of flight." Amici Brief at 17 (emphasis in original).

states that DHS placed too much emphasis on his criminal history, while ignoring the fact that he has never received a misbehavior report while in custody of either DOCS or DHS. Petitioner further states that DHS failed to consider that he has relatives residing lawfully in the U.S. Petitioner contends that DHS's review process was inadequate, because it did not provide an individualized hearing by a neutral decision-maker, improperly placed the burden of proof on him, and did not provide for an appeal.

On January 15, 2010, Petitioner commenced this action. Petitioner contends that he is being detained pursuant to INA § 236, 8 U.S.C. § 1226, and that such prolonged detention, without an individualized bond hearing, violates INA § 236(c) and the Fifth Amendment Due Process Clause. Petitioner acknowledges that § 236(c) "requires the Attorney General to take into custody certain classes of criminal aliens, including aliens with convictions of the nature of Petitioner's, and generally prohibits their release unless essential to a criminal investigation." Petition at 10. However, he contends that in situations such as his, where the appeal process becomes prolonged, criminal aliens become entitled to bond hearings under INA § 236(a).

In support of his position, Petitioner cites, *inter alia*, *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708 (2003), in which the majority stated that mandatory detention of criminal aliens under INA § 236(c), "for the brief period necessary for their removal proceedings," was constitutional, and in which Justice Kennedy, in a concurring opinion, indicated that a person detained under INA § 236(c) may become entitled to an individualized detention hearing if the continued detention becomes "unreasonable or unjustified." From this, Petitioner reasons that once removal proceedings are no longer "brief," aliens become entitled to bond hearings. Petitioner further maintains that at such a hearing, DHS should

6

bear the burden of proving that continued detention is necessary. As an additional factor in his favor, Petitioner offers, in conclusory fashion, that his appeal to the Second Circuit has merit[4], though that appears doubtful, since his attempt to have his drug conviction set aside appears to have failed, and since he has not explained why the BIA's determination was erroneous in any event.

In opposition to the petition, Respondents deny that Petitioner is being held pursuant to INA § 236(c). Instead, Respondents contend that Petitioner is being detained under INA § 241, since no court-ordered stay of deportation was entered, and further contend that such detention is reasonable and proper, pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001) ("*Zadvydas*"), since there is a "significant likelihood of removal in the reasonably foreseeable future." Specifically, Respondents maintain that the only obstacle to Petitioner's removal is the aforementioned forbearance policy. Respondents reiterate that INA § 236(c) does not apply to Petitioner, since his removal is stayed pursuant to the forbearance policy, and not pursuant to a judicial order. Respondent's Memo of Law at 10, n. 3. On this point, Respondents argue that Petitioner is essentially in control of his fate, since "review of his removal order can continue even if [he] is removed from the United States," and that "[s]uch being the case, [he] has the choice to remain in detention, or to agree to removal pending the Second Circuit's decision on his petition for review. To gain his release from continued detention, Luna-Aponte has only to withdraw his request for a stay of removal." *Id*. at 12. Alternatively, Respondents argue that even if Petitioner was being detained pursuant to INA § 236(c), such detention "would

---

[4] Petitioner's Traverse at 5-6 ("Petitioner has a substantial challenge to removal.").

be lawful given the facts of his case," *Id*. at 11, n. 3, since he has received all of the due process to which he is entitled.

Subsequently, *Amici Curiae* ("Amici") submitted a brief on behalf of Petitioner. Amici state that Respondents have misunderstood the nature of Petitioner's claim, since he has never alleged that his removal is not reasonably foreseeable. Instead, they maintain that Petitioner's prolonged detention has become unreasonable, and that DHS must provide him with an individualized bond hearing, at which DHS will bear the burden of proving that continued detention is necessary:

> Luna-Aponte seeks release not because his removal is not 'reasonably foreseeable' under *Zadvydas*, but because his nearly three years of detention, without a constitutionally adequate bond hearing, violates his rights under both the INA and the Due Process Clause . . . . Luna-Aponte has never asserted that his claim is ripe under the *Zadvydas* standard. . . . The Supreme Court has never upheld prolonged civil detention of this length in the absence of a meaningful hearing before an impartial adjudicator where the government bears the burden of justifying continued imprisonment. Yet far from receiving such a hearing, the only process that Mr. Luna-Aponte has received is a string of perfunctory administrative custody reviews before the very agency adjudicators who are responsible for his detention, where he bore the burden of demonstrating lack of danger and flight risk, had no opportunity to examine or rebut the Government's allegations, and had no appeal of the agency's decision. This kind of review falls far short of what due process requires.

Amici Brief at 3-4. However, Amici maintain that the Court need not, and should not, address the constitutional issue raised, and should instead interpret "the immigration statute" "as authorizing pre-final order immigration detention only for the period of time necessary to conclude removal proceedings[,] and as requiring a constitutionally adequate bond hearing whenever such detention becomes prolonged." *Id*. at 5.

Amici insist that Petitioner is being detained pursuant to INA § 236, and not § 241, but that, in either case, he is entitled to a bond hearing:

8

> [B]ecause Mr. Luna-Aponte's removal order has been [effectively] stayed pending judicial review, the best reading of the statutory scheme is that his detention is governed by [INA § 236],8 U.S.C. § 1226, the pre-removal order statute, and specifically the discretionary detention provision, § 1226(a), not the mandatory detention provision, § 1226(c).[5] Regardless of what statute applies, however, none of these provisions authorize Mr. Luna-Aponte's unreasonably prolonged detention, at least in the absence of a constitutionally adequate bond hearing.

Amici Brief at 19.

Essentially, Petitioner asks the Court to construe the relevant portions of the INA and its regulations so as to avoid finding them unconstitutional. First, Petitioner asks the Court to find that he is being detained under INA § 236, even though there is no court-ordered stay in place, because DHS's forbearance policy creates a "de facto stay of removal." Amici Brief at 21. Moreover, even though Petitioner, as a criminal alien, clearly falls under the mandatory detention provision of § 236(c), he maintains that the Court should treat him as falling under § 236(a), since prolonged detention under § 236(c) would violate the Due Process clause, in light of the Supreme Court's holding in *Demore*. Additionally, Petitioner contends that he is entitled to a hearing before a neutral authority, at which DHS must bear the burden of proving that continued detention is necessary, even though 8 C.F.R. § 241.4 places the burden of proof on the detained alien.

---

[5]INA § 236(c), 8 U.S.C. § 1226(c), "mandates detention during removal proceedings for a limited class of deportable aliens – including those convicted of an aggravated felony." *Zadvydas v. Davis*, 123 S.Ct. at 1714. The policy considerations behind 8 U.S.C. § 1226 are discussed at length in *Demore v. Kim*, 123 S.Ct. at 1714-1716. Clearly, if Petitioner is being detained pursuant to § 236, it is pursuant to subsection (c). However, Amici contend that prolonged, indefinite mandatory detention under that section is unreasonable, and that the Court should therefore find, for constitutional reasons, that Petitioner's detention status is now pursuant to subsection (a).

9

DISCUSSION

Petitioner brings this action pursuant to 28 U.S.C. § 2241(c)(3), which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Section 2241 allows for habeas challenges to civil detention by a person, such as Petitioner, who is the subject of a deportation order. *Zadvydas v. Davis*, 121 S.Ct. at 2498.

The Fifth Amendment's Due Process Clause applies to aliens, "whether their presence here is lawful, unlawful, temporary, or permanent," and this includes aliens subject to final orders of removal, "though the nature of that protection may vary depending upon status and circumstance." *Zadvydas v. Davis*, 121 S.Ct. at 2500-2501.

Congress has clearly indicated, in the INA, that deportable criminal aliens such as Petitioner are to be detained during the pendency of their removal proceedings. See, 8 U.S.C. § 1226(c); *Demore v. Kim*, 123 S.Ct. at 1720 ("Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."). Deportable aliens must also be detained during the first ninety days after their removal orders become final, 8 U.S.C. § 1231(a)(2), and criminal aliens such as Petitioner may be detained beyond that period. 8 U.S.C. § 1231(a)(6).

In *Demore v. Kim*, the Supreme Court held that mandatory detention of criminal aliens under INA § 236(c), during removal proceedings, is constitutional. In *Demore*, a deportable alien challenged his mandatory detention pending the outcome of his removal proceedings, on the grounds that 8 U.S.C. § 1226(c) violated the Fifth Amendment's Due

10

Process Clause. The alien argued, for example, that such mandatory detention was unnecessary, and that the government could instead conduct "individualized bond hearings." *Id.*, 123 S.Ct. at 1720. The Court rejected that argument, in keeping with its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.*, 123 S.Ct. at 1719. On this point, the *Demore* decision noted that, based on then-current statistics, detention under 8 U.S.C. § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.*, 123 S.Ct. at 1721. The Court observed that while such detention would be unconstitutional if it was "'indefinite' and 'potentially permanent,'" detention under INA § 236(c) was typically "of a much shorter duration." *Id.*, 123 S.Ct. at 1720 (citing *Zadvydas*). However, the Court did not set any time limits on the Government's ability to detain aliens under § 236(c). As indicated above, in a concurring opinion, Justice Kennedy observed that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien [subject to mandatory detention under 8 U.S.C. § 1226(c)] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.*, 123 S.Ct. at 1722 (Kennedy, J., concurring) (citing *Zadvydas*).

The Supreme Court has also held that indefinite detention of a criminal alien, following the entry of a final order of removal, under INA § 241, would violate the Due Process Clause. In *Zadvydas v. Davis*, a group of criminal aliens subject to final orders of removal challenged their continued civil detention, under 8 U.S.C. § 1231(a)(6), after it became apparent that they could not be deported because no country was willing to

11

accept them. The Court held that "indefinite detention" of such aliens "would raise serious constitutional concerns," and it therefore "construe[d] the statute to contain an implicit 'reasonable time' limitation." Id., 121 S.Ct. at 2495. The Court stated that such aliens may only be detained under that section "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id., 121 S.Ct. at 2505. The Court indicated that if removal is not reasonably foreseeable, the alien should be released on conditions:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

Id., 121 S.Ct. at 2504. The Court further stated that,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

Id. at 2505.

In the instant case, the Court finds, at the outset, that Petitioner is being detained pursuant to INA § 236(c), not INA § 241. Section 236 "governs the detention of aliens against whom the Government has initiated removal proceedings, but whose removal periods have not yet commenced." Wang v. Ashcroft, 320 F.3d at 146. Section 241, on the other hand, "governs the detention of aliens subject to final orders of removal," whose

12

removal periods have commenced. *Id*. at 145.

> The determination of when an alien becomes subject to detention under INA § 241 rather than INA § 236 is governed by INA § 241(a)(1). Pursuant to § 241(a)(1)(B)(ii), "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review]," then the removal period begins on "the date of the court's final order." Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision.

*Wang v. Ashcroft*, 320 F.3d at 147 (internal quotation marks omitted). In *Wang*, the alien argued that he was being detained pursuant to INA § 236, even though his removal had not been "formally stayed" by a court. The Second Circuit did not discuss the circumstances under which an order of removal might be deemed stayed, in the absence of a formal court order. Instead, the Court held that "to the extent that" Wang might have had a claim under Section 236, it was moot for other reasons, which are not relevant to this action. *Wang v. Ashcroft*, 320 F.3d at 147. In this case, Petitioner is seeking review of his final administrative order of removal by the Second Circuit, and his removal is effectively stayed pursuant to an agreement between the Attorney General and the Second Circuit. Consequently, although Petitioner does not meet the precise definition of 8 U.S.C. § 1231(a)(1)(B)(ii), the Court nevertheless finds that, for purposes of this action, the forbearance policy is the equivalent of a court-ordered stay of removal. Consequently, the Court finds that Petitioner is being detained pursuant to INA § 236, and that his

removal period has not yet begun.[6][7] More specifically, as a criminal alien, Petitioner is being detained under INA § 236(c), and he has no right to be released on bond.[8]

The issue before the Court, therefore, is whether Petitioner's detention, under INA § 236(c), for more than three years, all of which time is attributable to his attempt to appeal his final order of removal, without a bond hearing, violates the INA and/or the Due Process Clause. The Court finds that it does not.

As discussed earlier, in *Demore v Kim* the Supreme Court held that mandatory detention of criminal aliens under INA § 236, without a bond hearing, "for the brief period necessary for their removal proceedings" was constitutional. *Demore v. Kim*, 123 S.Ct. at 1712. With regard to its use of the term "brief," the Supreme Court observed that detention under INA § 236(c) has "a definite termination point," and, "in the majority of cases," "lasts for less than 90 days." *Id.*, 123 S.Ct. at 1720. The Court added that, "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.*, 123 S.Ct. at 1721.

Although, here, Petitioner's detention has been far longer than five months, he has not shown that his continued detention is unreasonable or unjustified. Significantly, there

---

[6] *But see, D'Alessandro v. Mukasey*, 628 F.Supp.2d 368 (W.D.N.Y. 2009) (Finding that detention was pursuant to INA § 241, where there was no court-ordered stay, and where parties agreed that detention was pursuant to § 241).

[7] To the extent that a reviewing Court may disagree, and find that Petitioner is being detained pursuant to INA § 241, this Court would nonetheless deny his petition, pursuant to *Zadvydas*, since he has not shown that there is no significant likelihood of his removal in the reasonably foreseeable future.

[8] *But see, Scarlett v. U.S. Dep't of Homeland Security*, 632 F.Supp.2d 214 (W.D.N.Y. 2009) (Finding that criminal alien, who was not immediately taken into custody by DHS upon his release from state custody, was being detained pursuant to INA § 236(a), not § 236(c), and was therefore entitled to a bond hearing).

is absolutely no impediment to Petitioner's eventual deportation. If the Second Circuit decides Petitioner's appeal adversely to him, there is nothing preventing him from being deported to the Dominican Republic.[9] In this regard, the instant case is distinguishable from *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003), a case cited by Petitioner, in which an eighteen-month period of detention under § 236(c) was held to be unreasonable, primarily because there was no chance that the alien would eventually be deported:

> [T]he district court determined that incarceration for one and one-half years as part of a civil, nonpunitive proceeding *when there was no chance of actual, final removal, was unreasonable. We agree*. As of the September 21, 2000 opinion and recommendation of the magistrate judge, Ly had been imprisoned for a year and a half with no final decision as to removability in the case. That decision as to removability was not made until nearly a month later, after the magistrate judge recommended granting the writ of habeas corpus. Ly served criminal sentences for his two convictions of a total of 12 months; he spent considerably more time than that in INS custody awaiting a determination on removal.
>
> Further, any detention under IIRIRA must be reasonably related to the goal of the statute. *Zadvydas*, 533 U.S. at 699-700, 121 S.Ct. 2491. The goal of pre-removal incarceration must be to ensure the ability of the government to make a final deportation. The danger is that a criminal alien, upon receiving notice of deportation proceedings, will flee. The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal proceedings. *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491. Because Ly was not removable, a year-and-a-half imprisonment awaiting removal proceedings was especially unreasonable.

*Id*., 351 F.3d at 271-272 (emphasis added). Petitioner's situation is more akin to that of the alien in *Adler v. U.S. Dep't of Homeland Security*, wherein Judge Scheindlin held that an eighteen-month period of detention under INA § 236(c) was reasonable:

> Adler's pre-removal detention has lasted fifteen months. This is more than twice as long as the maximum duration contemplated by the *Demore* Court.

---

[9] Moreover, as mentioned earlier, Petitioner has not demonstrated how his appeal before the Second Circuit has merit.

> However, there is no evidence in the record that the government has dragged its feet. Every adjournment in Adler's proceedings was upon Adler's motion. Although it is Adler's right to seek relief from deportation, the delays caused by his motions should not be attributed to the government.
>
> Furthermore, Adler's detention is not unjustified. As the *Demore* Court noted, a primary justification for mandatory detention under 236(c) is to prevent deportable aliens from fleeing. If an alien cannot be deported, this flight justification would be inapplicable. But Adler does not contest his deportability. The primary justification for detention under 236(c)-curbing the risk that a deportable alien will flee-therefore remains relevant to Adler's case, and it cannot be said that his detention is unjustified.

*Id.*, No. 09 Civ. 4093(SAS), 2009 WL 3029328 at *2 (S.D.N.Y. Sep. 22, 2009) (footnotes omitted); *see also, Demore v. Kim*, 123 S.Ct. at 1720 (Stating that INA § 236(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings[.]"); *but see, Monestime v. Reilly*, — F.Supp.2d —, No. 10 Civ. 1374(WHP), 2010 WL 1427672 (S.D.N.Y. Apr. 9, 2010) (Finding that Haitian criminal alien was entitled to bond hearing where, due to earthquake in Haiti, deportations would be halted for at least two years). Petitioner's detention, while perhaps much longer than normal, cannot be said to be "indefinite" or "potentially permanent," such as that faced by the aliens in *Zadvydas* or *Ly*. Instead, Petitioner's period of detention under § 236(c) will obviously end in the near future, since the Second Circuit is undoubtedly addressing his appeal as expeditiously as possible, and since he is deportable in the event that his appeal is denied.

Moreover, Petitioner does not allege, nor can he, that the delay in his case is attributable to the Government. Much to the contrary, the final administrative order in this case was entered more than three years ago, and since that time Respondents have been willing and ready to deport Petitioner. Petitioner, though, on August 13, 2007, filed

his appeal with the Second Circuit, and effectively stayed his deportation. Petitioner's appeal has apparently been taking longer to resolve than normal, as a result of his untimely filing of the appeal, and Respondent's subsequent motion to dismiss the appeal as untimely, which have necessitated the Second Circuit to address a threshold jurisdictional issue under the Suspension Clause. In that regard, as previously mentioned, the Second Circuit has consolidated Petitioner's case with several other cases raising the same issue, and has appointed counsel to represent Petitioner. On facts generally similar to the ones presented in this case, insofar as there was no delay by the Government, another court in this circuit recently denied an alien's habeas petition:

> At this point Mr. Andreenko's detention does not violate due process because there has been no showing that it was prolonged by the government nor that it is likely to last indefinitely or for a lengthy additional period of time, nor that his ultimate removal is improbable. The petitioner has explained that he "is in the process of filing [ ] 440 motions to vacate his 2005 controlled substance conviction in New York and his 2007 possession of marijuana conviction in Fredericksburg, [Virginia] .... due to *Padilla v. Kentucky*," 599 U.S. ----, 130 S.Ct. 1473 (2010). (Pet. Letter at 1). However, the probability of the petitioner's success in these planned attempts to vacate his previous convictions is speculative, and thus his likelihood of avoiding removal on this basis is too remote to warrant habeas relief.

*Andreenko v. Holder*, No. 09 Civ. 8535(CM)(JCF), 2010 WL 2900363 at *4 (S.D.N.Y. Jun. 25, 2010) (Report & Recommendation by the Hon. James C. Francis IV, Magistrate Judge); *see also, Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) ("Although [the alien-petitioner's] litigation strategy is perfectly permissible, we hold that [he] may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process."); *Miller v. Shanahan*, No. 09 Civ. 9712 (WHP), 2010 WL 481002 (S.D.N.Y. Jan. 29, 2010) (Two-and-one-half year detention under INA § 236(c) did not violate alien's due process rights, where delay was not attributable to the Government,

but instead was attributable to the alien's attempts to obtain cancellation of removal and to appeal his final administrative order of removal, and where the primary purpose behind INA § 236(a), "curbing the risk that a deportable alien will flee," remained relevant.).

Additionally, this is not a case where Petitioner faces indefinite detention, such as that faced by the aliens in *Zadvydas* and *Ly*. Much to the contrary, Petitioner can obtain his release to the Dominican Republic at any time. In *Zadvydas* and *Ly*, there was no country that was willing to accept the criminal aliens, and they therefore faced the prospect of permanent detention. Here, however, Petitioner is essentially remaining in custody voluntarily, rather than returning to the Dominican Republic and awaiting the outcome of his appeal there. In that regard, Petitioner sought a stay of deportation pending his appeal to the Second Circuit.[10] Under such circumstances, Petitioner's continued detention does not violate the Due Process Clause. The Government is willing to release Petitioner at any time, provided that he returns to the Dominican Republic.[11] Additionally, the fact that Petitioner would rather remain in custody here than return to the Dominican Republic suggests that if he is released here, even with conditions, he might be unwilling to comply with efforts to locate and deport him if his appeal is denied.

Furthermore, as to Petitioner's contention that he is entitled to an individualized

---

[10] The fact that Petitioner's motion has not, to date, been granted, and that his deportation has instead been stayed pursuant to the forbearance policy, is of little moment, since he clearly wanted his deportation stayed, and since he could withdraw his request if he wanted and agree to be deported at any time.

[11] The Court recognizes that under INA § 236(c), which the Court finds is applicable, detention is mandatory. However, if Petitioner asked to have the stay dissolved, he would then be detained pursuant to INA § 241, and could be deported immediately. In making this observation, the Court in no way is suggesting that Petitioner should be "punished" for appealing to the Second Circuit. Rather, as the Second Circuit stated in *Doherty v.Thornburgh*, "[a]lthough [the alien-petitioner's] litigation strategy is perfectly permissible, . . . [he] may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process." 943 F.2d at 211.

bond hearing, pursuant to, *inter alia*, *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) ("*Tijani*") and *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008) ("*Casas-Castrillon*"), the Court disagrees. In *Tijani*, a panel of the Ninth Circuit, with one judge dissenting, and with essentially no analysis, held that a criminal alien, who had been detained for almost three years, under INA § 236(c), was entitled to a bail hearing, because the removal process was not expeditious. *Id.*, 430 F.3d at 1242 ("To avoid deciding the constitutional issue, we interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens."). Subsequently, in *Casas-Castrillon*, another Ninth Circuit panel expanded the holding in *Tijani*, and held that, "[t]he statutory scheme governing the detention of aliens in removal proceedings is not static; rather, the Attorney General's authority over an alien's detention shifts as the alien move through different phases of administrative and judicial review." *Id.*, 535 F.3d at 945. The Court further reasoned that, even though the criminal alien had initially been detained pursuant to INA § 236(c), his detention eventually "shifted to § 1226(a), which gives the Attorney General discretionary authority" to release him. *Id.*, 535 F.3d at 947-48. Specifically, the Court held that the alien ceased being detained under § 236(c) when the BIA dismissed his appeal. *Id.* at 948 ("Once Casa's proceedings *before the BIA* were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to § 1226(a).") (emphasis added). The *Tijani* and *Casas-Castrillon* decisions are not binding on this Court, and this Court, respectfully, does not find them persuasive in any event. In that regard, *Casas-Castrillon*'s statement, that detention of criminal aliens under INA § 236(c) ends upon the completion of *BIA proceedings*, is contrary to decisions of the Second Circuit, which hold that criminal aliens, who are

appealing the dismissal of their actions by the BIA, before the Second Circuit, where a stay is in place, remain detained pursuant to INA § 236(c). *See, e.g., Wang v. Ashcroft*, 320 F.3d at 146, n. 25 (Stating that, "for most aliens convicted of crimes, detention prior to the removal period [where the alien appeals and deportation is stayed] is mandatory under § 236;" such statement is referring to § 236(c), not § 236(a), since detention under § 236(a) is not mandatory); *Abimbola v. Ridge*, No. 05-2700-cv,181 Fed.Appx. 97, 98 (2d Cir. May 18, 2006) (Stating that criminal alien, whose proceedings before the BIA were complete, and who was appealing to a Circuit Court of Appeals, was detained pursuant to INA § 236(c)). As discussed above, Petitioner, as a criminal alien, might be detained pursuant to INA § 236(c) or § 241(a)(6), but he is not detained pursuant to § 236(a).[12]

## CONCLUSION

Accordingly, the petition is denied and this action is dismissed. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated: Rochester, New York
September 10, 2010

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[12] As Petitioner admits, one of the cases upon which he relies, *Alli v. Decker*, 644 F.Supp.2d 535, 542 (M.D. Penn. 2009), expressly rejects *Casas-Castrillon*'s reasoning on this point, correctly observing that it is contrary to Congress's intent, since it "funnels deportable criminal aliens to § 1226(a), a portion of the statute which Congress never intended to apply to such aliens, and requires the Attorney General to exercise the very discretion over release of criminal aliens which Congress intended to restrict."